**UNIVERSAL OUTDOOR, INC., Plaintiff,**

v.

**ELK GROVE VILLAGE, Defendant.**

No. 97 C 2784.

United States District Court,
N.D. Illinois,
Eastern Division.

July 14, 1997.

---

1. Their cross-responses are due July 9, 1997.

Jerome Wiener, Robert C. Kenny, Patrick T. Brankin, Schain, Firsel & Burney, Ltd., Chicago, IL, for Plaintiff.

Ronald G. Zamarin, Des Plaines, IL, George B. Knickerbocker, Samelson, Knickerbocker & Payne, Des Plaines, IL, for Defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

On June 25, 1997 Elk Grove Village ("Elk Grove") filed a Fed.R.Civ.P. 16 motion to narrow the issues, in this action brought against it by Universal Outdoor, Inc. ("Universal"), by dismissing Universal's several claims as barred by principles of claim preclusion. Upon reviewing the parties' initial cross-submissions, this Court issued a brief June 30, 1997 memorandum opinion and order (the "Opinion") sua sponte, directing the litigants' attention to "an obvious question as to the timeliness of this action to begin with."[1] Now the parties have filed their respective cross-responses addressing both questions: claim preclusion and the statute of limitations. Hence Elk Grove's motion is ripe for decision.

### Statute of Limitations

Because the earlier action between the parties on which Elk Grove wishes to hang its claim-preclusion hat was a state court lawsuit, the applicable claim preclusion principles are a function of Illinois law under 28 U.S.C. § 1738 (*Matsushita Elec. Indus. Co. v. Epstein*, —— U.S. ——, ———–——, 116 S.Ct. 873, 877–78, 134 L.Ed.2d 6 (1996) and cases cited there). In addition, that area of law often tends to pose issues of considerable complexity. For both of those reasons, this opinion will first address the statute of limitations question.

Universal does not dispute—as it cannot—that if Elk Grove's general sign ordinance (the "Sign Code") is unconstitutional today, it was equally unconstitutional back in 1985 when the Sign Code first became applicable to the billboard involved in this lawsuit in consequence of Elk Grove's annexation of the real estate on which that billboard was situated. Nor does Universal dispute—again as it cannot—that if the 1985 ordinance that granted Universal only a 12–year variance from the Sign Code (the "Ordinance") is unconstitutional today by reason of the fact that it was not a grant of a permanent variance (of the fact that it did not reflect an otherwise unqualified recognition of Universal's right to maintain the billboard in perpetuity), it was equally unconstitutional back in 1985 when it was first granted.

Those things being true, if the Sign Code and the Ordinance do indeed infringe Universal's constitutional rights—as it now contends—Universal had a ripe claim of in-

---

1. That directive did not focus on all of Universal's claims, because it spoke only in terms of the controlling case law applicable to Universal's federal claims under 42 U.S.C. § 1983 ("Section 1983"). This opinion will therefore speak to those claims in the first instance, and will then go on to address Universal's state law claims briefly.

fringement of those rights back in 1985.[2] And that being the case, the Opinion indicated that the current lawsuit appeared to be subject to the bar of limitations as taught by the concept announced in *Delaware State College v. Ricks,* 449 U.S. 250, 258, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980).

It will be recalled that *Ricks* established the principle that the applicable limitations time clock began to tick in that case when plaintiff Ricks was told that he was denied professorial tenure and he "was offered a 1-year 'terminal' contract, with explicit notice that his employment would end upon its expiration" (*id.*)—and *not* at the later date when his employment actually terminated. As the Court held (*id.,* citations and footnotes omitted, emphasis in original):

> In sum, the only alleged discrimination occurred—and the filing limitations period therefore commenced—at the time the tenure decision was made and communicated to Ricks. That is so even though one of the *effects* of the denial of tenure—the eventual loss of a teaching position—did not occur until later. The Court of Appeals for the Ninth Circuit correctly held, in a similar tenure case, that "[t]he proper focus is upon the time of the *discriminatory acts,* not upon the time at which the *consequences* of the acts became most painful." It is simply insufficient for Ricks to allege that his termination "gives present effect to the past illegal act and therefore perpetuates the consequences of forbidden discrimination."

And a Shepard's printout of cases that follow the teaching in *Ricks* discloses a host of decisions that consistently apply the same proposition, focusing on the date when a party's rights have become established so that the party "knows or should know that his or her constitutional rights have been violated" (*Wilson v. Giesen,* 956 F.2d 738, 740 (7th Cir.1992)) because the adverse governmental decision has already been made (*Ricks,* 449 U.S. at 259, 261, 101 S.Ct. at 504–05, 505–06).

Indeed, even without reference to *Ricks,* the identical principle has been announced and applied in a case presenting some startling parallels to this one *De Anza Properties X, Ltd. v. County of Santa Cruz,* 936 F.2d 1084 (9th Cir.1991). Here is how *De Anza, id.* at 1086 rejected a challenge to a county ordinance by a party contending that it had not become injured—and hence that the statute of limitations did not begin to run—until the effect of the ordinance kicked in as the result of the sale of a mobile home:

> The flaw in this theory is that the provision of the ordinance which they challenge has remained exactly the same since 1982. The conduct of the county has thus remained exactly the same at all times material to this case, and the effect of the ordinance upon the plaintiffs has not altered. Appellants were experiencing substantially the same injury in 1982 that they experienced in 1987. They were on notice that their property interests would be affected by the ordinance at the time it was enacted.

What does Universal offer up in response to that notion? Its only proffered basis for escaping from the concept that its claims have not lain dormant since 1985, and for urging instead that the claims ripened only at the much later date when "the *consequences* became most painful," is this (Universal R. Mem. 2–3):

> Sign ordinances and special use ordinances, such as those at issue in this case, are frequently extended or amended. Starting at the day of the adoption of the ordinances, Universal had the opportunity to meet with Elk Grove officials and negotiate changes to the ordinances, thereby administratively extending the time for the existence of its sign. Therefore, any action brought prior to the efforts by Elk Grove to enforce its ordinances would not have been ripe for adjudication.

 Even apart from the unsupported ipse dixit nature of Universal's major premise, that contention is wholly unpersuasive as

---

**2.** Universal can scarcely claim that it was unaware of its constitutional rights until now. After all, it did file a state court action challenging the constitutionality of the Sign Code a full dec- ade ago, in 1987, when Elk Grove had refused on the strength of the Sign Code to permit the erection of other billboards.

an excuse for its letting its rights lapse. Ricks himself might just have well have argued that his belated suit was not untimely because the College's Board of Trustees could perhaps have changed its mind about denying him tenure and terminating him—indeed, he did point to a letter by the Board that "indicated a willingness to change its prior decision if Ricks' grievance were found to be meritorious" (449 U.S. at 261, 101 S.Ct. at 505), and the Supreme Court rejected that argument out of hand as a basis for either deferring or tolling the ticking of the limitations clock (*id.*). Or a party to any contract might just as well argue that it did not file a timely suit for breach of that contract because (adapting Universal's language) it "had the opportunity to meet with [the other party] and negotiate changes to the [contract]." When as here a legislative enactment is firmly in place, no one can claim justifiable reliance on the speculative possibility that there might be future changes—changes to which of course the legislative body has no duty whatever to agree.

▇ Hence Universal's limited right to keep its billboard in place became fixed in 1985, when it first became subject to Elk Grove's jurisdiction and when it then obtained permission for a limited 12–year life for the billboard. Just as in *Ricks,* Universal's Section 1983 claims became ripe at that point. All of Universal's federally-based claims in this action, having been asserted only now—at "the time at which the *consequences* of the acts became most painful" (*Ricks,* 449 U.S. at 258, 101 S.Ct. at 504)—therefore come too late and are barred by the statute of limitations.

### Claim Preclusion

As stated at the outset of this opinion, the parties also debate the question whether all of the claims in this action (not just the federal-question claims) are also barred by claim preclusion—by Universal's unsuccessful state court litigation in which it attacked the Sign Code (in another context) on constitutional and other grounds (Case No. 87 CH 4249 in the Circuit Court of Cook County,

*aff'd,* 194 Ill.App.3d 303, 141 Ill.Dec. 208, 550 N.E.2d 1254 (1st Dist.1990)). Because that action was disposed of in terms of its pleading deficiencies rather than after a trial, Elk Grove has had to point to the provision of Ill. Sup.Ct. R. 273 that a dismissal on that basis "operates as an adjudication upon the merits,"[3] so that it has been compelled to peg its argument in claim preclusion rather than issue preclusion terms.

Maybe the best clue to the existence of analytical difficulties on this score is that both sides purport to rely on the very same case (*Torcasso v. Standard Outdoor Sales, Inc.,* 157 Ill.2d 484, 193 Ill.Dec. 192, 626 N.E.2d 225 (1993)) to support their polar-opposite positions. But there is no need to venture upon that analysis as to Universal's federal claims, given the fatal flaw discussed in the first section of this opinion. It is enough to say that those claims are out of time, as is clearly the case.

As stated earlier, Universal has also advanced some state law claims under the supplemental jurisdiction provisions of 28 U.S.C. § 1367(a). Because the parties have not addressed those claims (except to the extent that they may be impacted by claim preclusion analysis, which would not necessarily appear to be fully dispositive of all those claims even if Elk Grove were to prevail on that score), this Court will exercise its discretion under *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966) to dismiss those claims without prejudice.

### Conclusion

Universal's Complaint carries its own death warrant as to its Section 1983 claims: It demonstrates that Universal is complaining of an asserted constitutional wrong that it actually suffered in 1985, when its billboard became subject to the Sign Code and to the Ordinance that gave the billboard only a limited life by way of a variance from that Code. As such, this action comes 10 years too late in terms of the two-year statute of limitations that applies to all Illinois-based Sec-

---

3. For its part Universal ignores that language, pointing to a maverick Illinois Appellate Court opinion that does not mention the controlling Supreme Court Rule at all.

tion 1983 actions. Because all of Universal's federal-question claims, though they bear several different labels, must rely on that fount of jurisdiction, they are dismissed as untimely. And as for Universal's state-law claims, they are dismissed without prejudice for the reason stated at the end of the preceding section. That then results in the total dismissal of this action.