Nos. 2--03--1392 & 2--04--0575 cons.

_________________________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_________________________________________________________________________________

LAMAR WHITECO OUTDOOR ) Appeal from the Circuit Court

CORPORATION,  JAGEN LINGAMNENI, ) of Du Page County.

and PHILLIP VOVOLA, )

)

Plaintiffs-Appellants, )

)

v. ) No. 01--MR--907

)

THE CITY OF WEST CHICAGO and BILL )

BEEBE, Code Enforcement Officer for the )

City of West Chicago, in his Official Capacity, ) Honorable

) Patrick J. Leston,

Defendants-Appellees. ) Judge, Presiding.

_________________________________________________________________________________

CLEAR CHANNEL OUTDOOR, INC., ) Appeal from the Circuit Court

f/k/a Eller Media Company, ) of Du Page County.

successor-in-interest to Patrick Media as )

successor-in-interest to Foster and Kleiser, ) Nos. 99--MR--0973

RICHARD HOWLAND, RONALD KUHN, ) 99--OV--8698

and HARRY W. KUHN, ) 99--OV--8699

) 99--OV--9644

Plaintiffs-Appellants, ) 99--OV--9645

) 99--OV--9647

v. ) 99--OV--9648

)

THE CITY OF WEST CHICAGO, ) Honorable

) Edward R. Duncan, Jr.,

Defendant-Appellee. ) Judge, Presiding.

_________________________________________________________________________________

JUSTICE BYRNE delivered the opinion of the court:

These consolidated appeals each involve a challenge to a City of West Chicago (City) zoning ordinance that was amended on October 19, 1992, to ban certain commercial and noncommercial off-premises advertising structures, including all billboards.  The amended ordinance provided for a seven-year "amortization" period, or grace period, for removing existing nonconforming structures or making them compliant with the ordinance.  The ordinance did not provide for the compensation of an individual who lost the right to display a sign.

Plaintiffs allege that they lawfully erected billboards before the City amended the ordinance to ban the structures.  However, 
plaintiff
s did not challenge the amended ordinance until the expiration of the seven-year amortization period, when the City began enforcing the ban by issuing nontraffic citations (hereinafter, tickets).  Generally, 
plaintiff
s alleged violations under section 1983 of the Civil Rights Act of 1991 (42 U.S.C. § 1983 (2000)) and section 7--101 of the Eminent Domain Act (735 ILCS 5/7--101 (West 2002)).  The trial court dismissed portions of plaintiffs' complaints on statute of limitations grounds.  Plaintiffs appeal, alleging that their claims did not accrue, and therefore the applicable limitations periods did not begin to run, until the amortization period expired.  We conclude that both the section 1983 claims and the eminent domain claims accrued when the City issued the tickets.  Because 
plaintiff
s filed their complaints within the applicable limitations periods, we reverse the trial court's dismissal of those claims as untimely.

FACTS

The zoning ordinance scheme as amended on October 19, 1992, provides in relevant part:

"Billboard: Any single- or double-faced street graphic that is permanently fixed or placed on [a] particular premises and that is used for the display of messages or advertising not associated with the establishment located on said premises.  A billboard typically has [a] provision for changing the message/advertising thereon.

* * *

12.3--1 General Prohibition

Any sign or other street graphic not expressly permitted by this ordinance shall be deemed prohibited in this municipality.

* * *

12.4--1 Strictly Prohibited Signs

The following signs are strictly prohibited everywhere in this municipality:

* * *

(G) Billboards[.]

* * *

12.4--12.  Billboards

Billboards (including all off-premises advertising signs) are strictly prohibited.

12.5 ADMINISTRATION AND ENFORCEMENT

12.5--1 Enforcement Officer, Duties

The Zoning Administrator, referred to herein as the Administrator, is hereby authorized and directed to administer and enforce the provisions of this ordinance.  This broad responsibility encompasses, but is not limited to, the following specific duties:

(A) to review and pass upon applications for street graphic permits;

(B) to inspect existing and newly constructed street graphics to determine compliance with this ordinance; and where there are violations, to initiate appropriate corrective action;

(C) to review and forward to the Zoning Board of Appeals all applications for special street graphic permits, variances and appeals;

(D) to maintain up-to-date records of said applications and of any official actions taken pursuant thereto;

(E) to periodically review the provisions of this ordinance to determine whether revisions are needed, and to make recommendations on these matters to the Plan Commission[.]

* * *

12.5--2 Sign Permits

Upon the effective date of this ordinance, no *** billboard *** shall be erected, expanded, altered, relocated, or reconstructed without a sign permit issued by the Administrator.

* * *

12.6 NONCONFORMING SIGNS

12.6--1 Restrictions

A nonconforming sign that does not pose an important peril to life or property may remain and be maintained by ordinary repairs, but shall not be:

(A) Altered or enlarged in such a way as to increase its nonconformity;

(B) Replaced by another nonconforming sign (provided that changing the message on a changeable copy sign shall not be deemed a violation of this provision);

(C) Relocated unless it is made to conform with this ordinance; or

(D) Reconstructed after incurring damage in an amount exceeding fifty percent (50%) of its market value at the time of loss as determined by the Administrator.

(E) Must be removed [
sic
] upon close of business.

* * *

12.6--5.  Amortization

(A) Any sign that is nonconforming on the effective date of this ordinance [October 19, 1992] shall either be removed or made to comply with said ordinance within the time limit of seven (7) years.

(B) Any sign that becomes nonconforming because of any amendment to this ordinance shall either be removed or made to comply with the provisions of said ordinance within seven (7) years after its effective date."  West Chicago Municipal Code §§12.2 through 12.6--5 (amended October 19, 1992).

1. Whiteco (Appeal No. 2--03--1392)

On March 31, 2000, Lamar Whiteco Outdoor Corp. (Whiteco), Jagen Lingamneni, and Phillip Vovola (collectively, the Whiteco plaintiffs) filed a six-count complaint in the United States District Court for the Northern District of Illinois, challenging the amended zoning ordinance.  Pursuant to the abstention doctrine, the district court dismissed the complaint without prejudice to further state proceedings.  
Lamar Whiteco Outdoor Corp. v. City of West Chicago
, No. 00--C--1994 (N.D. Ill. May 2, 2001).  The Whiteco plaintiffs refiled the complaint in the circuit court of Du Page County on October 23, 2001.

The complaint alleges that, before the City amended the ordinance, Whiteco's predecessor-in-interest lawfully erected "billboards" on parcels currently owned by Chester Sawko and plaintiffs Lingamneni and Vovola.  Count I of the complaint alleges that "the City's attempted enforcement of the [ordinance] without just compensation constitutes a regulatory taking in violation of 
plaintiff
s' Fifth and Fourteenth Amendment rights under the United States Constitution."  Count II alleges that "the content-based limitations placed on non-commercial speech by the [ordinance] violate[] 
plaintiff
s' First Amendment right to free speech under the United States Constitution."  Count III alleges an unreasonable limitation on the exercise of free speech in violation of the first amendment.  Count IV alleges that the ordinance is unconstitutionally vague.

Count V alleges a federal civil rights claim under section 1983 of the Civil Rights Act (42 U.S.C. § 1983 (2000)) against the City and defendant Bill Beebe, the City's code enforcement officer, for the violations alleged in counts I through IV.  Count VI alleges a claim for just compensation under section 7--101 of the Eminent Domain Act (Act) (735 ILCS 5/7--101 (West 2002)).

On March 19, 2002, the City moved to dismiss the complaint under sections 2--615, 2--619(a)(5), and 2--619(a)(9) of the Code of Civil Procedure (Code) (735 ILCS 5/2--615, 2--619(a)(5), (a)(9), 2--619.1 (West 2002)).  The trial court denied the motion, and the City moved to reconsider, arguing that (1) the two-year limitations period that applies to section 1983 claims in Illinois bars count V and (2) the five-year limitations period of section 13--205 of the Code bars count VI.  The court credited the City's arguments and dismissed counts V and VI under section 2--619(a)(5) of the Code, concluding that the claims accrued on the date the ordinance was amended, and therefore, both limitations periods expired before counts V and VI were filed.  The trial court declined to dismiss counts I through IV, and those claims remain pending below.  The trial court found no just reason to delay enforcement or appeal of the order dismissing counts V and VI, and appeal No. 2--03--1392 timely followed.

2.  Clear Channel (Appeal No. 2--04--0575)

On December 14, 1999, Clear Channel Outdoor, Inc. (Clear Channel), Richard Howland, Ronald Kuhn, and Harry Kuhn (collectively, the Clear Channel plaintiffs) filed a declaratory judgment action alleging the following facts.  Clear Channel erects and maintains billboards and makes them available to businesses to display commercial and noncommercial messages.  Clear Channel is the successor-in-interest to businesses that erected billboards on two leased parcels in 1979 and 1984.  The parcels were part of unincorporated Du Page County at the time the billboards were erected, and Richard Howland, Ronald Kuhn, and Harry Kuhn owned the parcels at the time the complaint was filed.

The City annexed the parcels in 1989 and 1991.  In October 1992, the City amended its zoning ordinance to ban all commercial and noncommercial off-premises advertising structures.  The Clear Channel 
plaintiff
s did not remove their billboards after the seven-year amortization period expired.  In October and November 1999, the City issued tickets to each of the Clear Channel 
plaintiff
s, demanding removal of the billboards.

Count I of the complaint alleges that the amended ordinance violated section 7--101 of the Eminent Domain Act (735 ILCS 5/7--101 (West 2002)).  Count I mentions the Highway Advertising Control Act of 1971 (225 ILCS 440/1 
et
 
seq
. (West 2002)) in passing but does not cite a provision under which relief could be granted.  On June 12, 2000, the Clear Channel plaintiffs amended their complaint to additionally allege section 1983 free speech and takings violations pursuant to the first, fifth, and fourteenth amendments to the United States Constitution (U.S. Const., amends. I, V, XIV) (count II) and sections 2, 4, 15, and 16 of article I of the Illinois Constitution (Ill. Const.1970, art. I, §§2, 4, 15, 16) (count III).

The parties filed opposing motions for summary judgment, which the trial court denied.  On January 29, 2004, the City moved to dismiss the amended complaint as untimely under 
only
 section 2--619(a)(5) of the Code.  On March 12, 2004, the trial court dismissed the entire complaint.  The court cited 
Universal Outdoor, Inc. v. Elk Grove Village
, 969 F. Supp. 1125 (N.D. Ill. 1997), in concluding that the Clear Channel 
plaintiff
s' section 1983 claim accrued when the ordinance was amended, not when the City enforced the ordinance seven years later.  The Clear Channel 
plaintiff
s moved for reconsideration, arguing that their claims were "facial" constitutional challenges and therefore not subject to any statute of limitations.  In denying the motion, the trial court interpreted counts II and III as challenges to the application of the amended ordinance to the Clear Channel 
plaintiff
s in particular.  Appeal No. 2--04--0575 timely followed the denial of the motion.

ANALYSIS

In these consolidated appeals, 
the Whiteco plaintiff
s and the Clear Channel 
plaintiff
s (collectively, 
plaintiff
s) present similar arguments.  Plaintiffs argue that neither their section 1983 regulatory takings claims nor their state eminent domain claims accrued until the date on which the City issued tickets for violations of the ordinance.  Therefore, plaintiffs argue, their complaints are timely because they were filed within the two- and five-year limitations periods that the trial court applied to the section 1983 and eminent domain claims, respectively.  Plaintiffs alternatively contend that, even if their eminent domain claims accrued on October 19, 1992, the date on which the ordinance was amended, they are nevertheless timely because the 20-year limitations period for adverse possession claims applies to those claims.  The City responds that the trial court correctly dismissed the section 1983 and eminent domain claims as time barred.

Under section 2--619(a)(5) of the Code, a defendant is entitled to a dismissal if the "action was not commenced within the time limited by law."  735 ILCS 5/2--619(a)(5) (West 2002).  A motion to dismiss pursuant to section 2--619 of the Code admits the legal sufficiency of the complaint but asserts affirmative matter to avoid or defeat the claim.  
Rajcan v. Donald Garvey & Associates, Ltd.
, 347 Ill. App. 3d 403, 407 (2004).  The decision to dismiss a complaint under section 2--619 is subject to 
de
 
novo
 review.  
Carroll v. Paddock
, 199 Ill. 2d 16, 22 (2002).  "[T]he reviewing court must [determine] whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether the dismissal is proper as a matter of law."  
Carroll
, 199 Ill. 2d at 22.

1.  Section 1983

a.  Regulatory Takings (Whiteco and Clear Channel)

Section 1983 is a means of vindicating a federal constitutional or statutory right of which one  is deprived under the color of state law.  42 U.S.C. § 1983 (2000); 
Nelson v. Crystal Lake Park District
, 342 Ill. App. 3d 917, 920 (2003).  In these cases, 
plaintiff
s assert that a section 1983 claim exists because the City violated the fifth amendment to the United States Constitution and article I, section 15, of the Illinois Constitution, which each prohibit the taking or damaging of private property for a public purpose without payment of just compensation.  See U.S. Const., amend. V; Ill. Const. 1970, art. I, §15; 
City of Chicago v. Harris Trust & Savings Bank
, 346 Ill. App. 3d 609, 621 (2004).

In Illinois, the limitations period for an action brought pursuant to section 1983 (42 U.S.C. § 1983 (2000)) is two years.  
McGee v. Snyder
, 326 Ill. App. 3d 343, 352 (2001).  The limitations period for a section 1983 claim is derived from the statute that would control a personal injury action in the state where the alleged constitutional deprivation occurred.  
Wilson v. Garcia
, 471 U.S. 261, 280, 85 L. Ed. 2d 254, 269, 105 S. Ct. 1938, 1949 (1985); 
McGee
, 326 
Ill. App. 3d
 at 352.  While federal law determines when a cause of action accrues (
Sellars v. Perry
, 80 F.3d 243, 245 (7th Cir.1996)), state law determines what circumstances toll the limitations period (
Board of Regents of the University of New York v. Tomanio
, 446 U.S. 478, 483-84, 64 L. Ed. 2d 440, 447-48, 100 S. Ct. 1790, 1794-95 (1980)).

In each of these cases, the trial court concluded that 
Universal Outdoor
 controls the issue of when plaintiffs' section 1983 causes of action accrued.  In 
Universal Outdoor
, Universal erected a billboard on a parcel that was later annexed by Elk Grove Village (the village).  In 1985, the village enacted a sign ordinance barring billboards, but the village granted Universal a 12-year variance from the ordinance.  When the variance expired in 1997, Universal filed a section 1983 claim in the United States District Court for the Northern District of Illinois, alleging that the village's sign code and sign ordinance unconstitutionally infringed Universal's right to a permanent variance.  The district court granted the village's motion to dismiss the complaint as untimely, emphasizing that, if the sign code and sign ordinance were unconstitutional on the date the complaint was filed, they were equally unconstitutional when enacted more than 12 years earlier.  
Universal Outdoor
, 969 F. Supp. at 1126.

The 
Universal Outdoor
 court did not specify which statute of limitations applied, but it is clear that the two-year limitations period applied to Universal's section 1983 claim.  See, 
e.g.
, 
McGee
, 326 Ill. App. 3d at 352.  Because Universal's section 1983 claim ripened in 1985, the limitations period expired in 1987, several years before Universal filed its complaint.  
Universal Outdoor
, 969 F. Supp. at 1128.

Although this court is not bound to follow federal district court decisions (see 
People v. Reatherford
, 345 Ill. App. 3d 327, 340 (2003)), such decisions can provide guidance and serve as persuasive authority (
People v. Criss
, 307 Ill. App. 3d 888, 900 (1999)).  Because of the contractual nature of the arrangement between Universal and the village, the 12-year variance granted to Universal is distinguishable from the 7-year amortization period that applies to 
plaintiff
s' billboards here.  Therefore, we find 
Universal Outdoor
 to be unpersuasive, especially in light of its reliance upon 
Delaware State College v. Ricks
, 449 U.S. 250, 66 L. Ed. 2d 431, 101 S. Ct. 498 (1980).

In 
Ricks
, the plaintiff was told that he was denied professorial tenure, and he "was offered a 1-year 'terminal' contract, with explicit notice that his employment would end upon its expiration" and 
not
 on a later date when his employment actually terminated.  
Ricks
, 449 U.S. at 258, 66 L. Ed. 2d at 439, 101 S. Ct. at 504.  The 
Ricks
 Court held that the applicable limitations period began when the plaintiff was notified that his contract would expire in one year even though his last day on the job might come some time later.  The Court emphasized:

" 'In sum, the only alleged discrimination occurred--and the filing limitations period therefore commenced--at the time the tenure decision was made and communicated to Ricks.  That is so even though one of the 
effects
 of the denial of tenure--the eventual loss of a teaching position--did not occur until later.  The Court of Appeals for the Ninth Circuit correctly held, in a similar tenure case, that "[t]he proper focus is upon the time of the 
discriminatory acts
,
 not upon the time at which the 
consequences
 of the acts became most painful."  It is simply insufficient for Ricks to allege that his termination "gives present effect to the past illegal act and therefore perpetuates the consequences of forbidden discrimination." ' "  (Emphasis in original.)  
Universal Outdoor
, 969 F. Supp. at 1127, quoting  
Ricks
, 449 U.S. at 258, 66 L. Ed. 2d at 440, 101 S. Ct. at 504.

Citing 
Ricks
, the 
Universal Outdoor
 court summarily rejected Universal's argument that its section 1983 claim did not ripen until the 12-year variance expired and " 'the consequences became most painful.' " (Emphasis omitted.)   
Universal Outdoor
, 969 F. Supp. at 1127.  However, in both 
Ricks
 and 
Universal Outdoor
, the plaintiffs accepted without objection an arrangement about which they later complained: in 
Ricks
, the plaintiff negotiated a 1-year contract that extended his employment, and in 
Universal Outdoor
, Universal sought and obtained a variance that permitted the continued display of its billboards for 12 more years.  By contrast, in this case, the City unilaterally enacted the ordinance without any input from or negotiations with plaintiffs.  Unlike in 
Universal Outdoor
, plaintiffs did not implicitly agree to the future sign ban in exchange for the amortization period.  For these and the following reasons, we depart from 
Universal Outdoor
 and agree with the Clear Channel plaintiffs that a taking did not occur until the 
enforcement
 of the ordinance "radically curtailed Plaintiffs' use of their property."

Plaintiffs correctly illustrate that, in analyzing the section 1983 ripeness issue in the context of a zoning ordinance amendment, 
Universal Outdoor
 failed to consider 
Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City
, 473 U.S. 172, 87 L. Ed. 2d 126, 105 S. Ct. 3108 (1985), the seminal opinion in which the Supreme Court articulated the test for determining when a takings claim accrues: "As the Court has made clear in several recent decisions, a claim that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached 
a final decision regarding the application of the regulations to the property at issue
."  (Emphasis added.)  
Williamson County
, 473 U.S. at 186, 87 L. Ed. 2d at 139, 105 S. Ct. at 3116.  We conclude that 
Williamson County
 supports our conclusion that 
plaintiff
s' section 1983 claims accrued on the date the tickets were issued.

In 
Williamson County
, a property owner filed a section 1983 claim in federal court, alleging that the planning commission effected a regulatory taking by changing a zoning ordinance to reduce the allowable density of dwelling units in a proposed residential development.  At the time the development was proposed, the county's zoning ordinance and the planning commission's regulations required subdivision developers to seek review and approval in two stages via the submission of a preliminary plat and a final plat.  In 1973, the commission approved the preliminary plat subject to approval of a final plat.  The commission's regulations provided that the approval of a preliminary plat would lapse if, within one year, a final plat were not submitted or the preliminary plat were not renewed.  
Williamson County
, 473 U.S. at 177, 87 L. Ed. 2d at 133, 105 S. Ct. at 3111-12.  Before submitting a final plat for approval, the developer spent approximately $3.5 million to improve the property and obtained reapproval of the preliminary plat as required.  
Williamson County
, 473 U.S. at 178, 87 L. Ed. 2d at 133-34, 105 S. Ct. at 3112.

In 1977, the county changed the zoning ordinance to reduce the allowable density of the residences.  After initially applying the preamendment version of the ordinance to the developer's preliminary plat, the commission reversed its position and directed the developer to submit a revised preliminary plat.   
Williamson County
, 473 U.S. at 179, 87 L. Ed. 2d at 134, 105 S. Ct. at 3112.  The commission noted several problems with the developer's revised preliminary plat, including noncompliance with the new density limits.  
Williamson County
, 473 U.S. at 179-80, 87 L. Ed. 2d at 134-35, 105 S. Ct. at 3113-14.  The county's zoning board of appeals determined that the commission should have applied the preamendment versions of the ordinance and regulations to the developer's plat.  The commission disagreed and disapproved the plat on eight grounds, and the developer sued.  
Williamson County
, 473 U.S. at 181-82, 87 L. Ed. 2d at 135-36, 105 S. Ct. at 3114.  At trial, the developer's expert testified that the developer was entitled to build 476 units, but instead suffered $1 million in damages when the commission authorized only 67 units.  The commission's expert testified that the eight objections could be overcome with a design that would allow 300 units.  
Williamson County
, 473 U.S. at 182, 87 L. Ed. 2d at 136, 105 S. Ct. at 3114.

The Court held that the developer's section 1983 claim was premature because the developer had not obtained the commission's final decision on the applicability of the amended ordinance and regulations.  Rejecting the developer's claim that it " 'did everything possible to resolve the conflict with the commission,' " the Court noted that the developer expressly refused to petition the commission or the board of zoning appeals for "variances [that] could have been granted to resolve at least five of the Commission's eight objections to the plat."  
Williamson County
, 473 U.S. at 188, 87 L. Ed. 2d at 139-40, 105 S. Ct. at 3117.  The Court emphasized:

"[I]n the face of [the developer's] refusal to follow the procedures for requesting a variance, and its refusal to provide specific information about the variances it would require, respondent hardly can maintain that the Commission's disapproval of the preliminary plat was equivalent to a final decision that no variances would be granted.

***  Our reluctance to examine taking claims until such a final decision has been made

is compelled by the very nature of the inquiry required by the Just Compensation Clause.  Although '[t]he question of what constitutes a "taking" for purposes of the Fifth Amendment has proved to be a problem of considerable difficulty,' [citation] this Court consistently has indicated that among the factors of particular significance in the inquiry are the economic impact of the challenged action and the extent to which it interferes with reasonable investment-backed expectations.  [Citations.]  Those factors simply cannot be evaluated until the administrative agency has arrived at a final, definitive position regarding how it will apply the regulations at issue to the particular land in question."  
Williamson County
, 473 U.S. at 190-91, 87 L. Ed. 2d at 141, 105 S. Ct. at 3118-19.

Plaintiffs cite 
Williamson County
 for the proposition that their section 1983 claims did not ripen until the City issued the tickets against them.  Plaintiffs argue that the amended ordinance's adverse impact on their "reasonable investment-backed expectations" could not be ascertained until the amortization period expired in October 1999, and therefore, the issuance of the tickets qualified as the City's "final decision" on the application of the ordinance to the billboards.  We agree.

The section 1983 claim in 
Williamson County
 was not ripe because the developer had failed to exhaust the procedures available for obtaining a variance, and therefore, the amended ordinance's effect on the developer's reasonable investment-backed expectations could not be ascertained.  The testimony from the parties' dueling experts indicated that the commission's latest ruling permitted only 67 units but that an alternative plan would allow as many as 300.  In this case, the amended ordinance afforded plaintiffs a procedure for obtaining a special use permit that would allow the billboards to remain.  However, plaintiffs never sought such a permit by filing a petition on which the City could reach a final decision regarding the application of the regulations to the property at issue.  See 
Williamson County
, 473 U.S. at 186, 87 L. Ed. 2d at 138, 105 S. Ct. at 3116.  Instead, plaintiffs did nothing until the amortization period expired and the City issued the tickets demanding the removal of the billboards.  In the absence of a petition for a special use permit and the rendering of a decision on such a petition, we consider the issuance of the tickets to be the City's "final determination," as that term is used in 
Williamson County
, of the applicability of the ordinance to the billboards
.  Therefore, we conclude that 
plaintiff
s' section 1983 claims did not ripen and the two-year limitations period did not begin to run until the tickets were issued.  Because plaintiffs filed their complaints before the limitations period expired, the trial court erroneously dismissed 
plaintiff
s' section 1983 claims as untimely.

We note that our decision is supported by 
Key Outdoor Inc. v. City of Galesburg
, 327 F.3d 549 (7th Cir. 2003), which involved facts very similar to those presented here.  In 
Key Outdoor
, the City of Galesburg enacted an ordinance banning most of the signage in the city, but the ordinance deferred the effective date of the ban until 2009.  The plaintiffs sued in state court, alleging a regulatory taking, and Galesburg responded that the amortization period satisfied the requirement of just compensation, which is guaranteed by the federal and state constitutions.  
Key Outdoor
, 327 F.3d at 549.  Galesburg removed the case to federal court, where all of the claims were dismissed as premature because the plaintiffs had failed to exhaust their remedies under state law.  
Key Outdoor
, 327 F.3d at 549-50.

On appeal to the United States Seventh Circuit Court of Appeals, the plaintiffs conceded that the federal takings claim was premature.  Although the appellate court did not explicitly address the issue, the court acknowledged that Galesburg had benefitted in delaying the case by relying upon the ripeness doctrine set forth in 
Williamson County
.  
Key Outdoor
, 327 F.3d at 550 ("When [Galesburg] removed the suit to federal court, and frustrated plaintiffs' effort to invoke state remedies, it logically either surrendered the benefit of 
Williamson [County]
 or consented in advance to the remand of state-law theories, so that the process required by 
Williamson [County]
 could run its course").  The court remanded the matter to the state court for the resolution of the plaintiffs' state-law claims.  
Key Outdoor
, 327 F.3d at 550.  
Key Outdoor
 illustrates that the ripeness principles established by 
Williamson County
 apply to federal takings claims, like plaintiffs', that are directed toward a municipal ordinance that includes an amortization period.

b.  Free Speech (Clear Channel)

The Clear Channel plaintiffs additionally cite 
Frye v. City of Kannapolis
, 109 F. Supp. 2d 436 (M.D. N.C. 1999), and 
Lavey v. City of Two Rivers
, 994 F. Supp. 1019 (E.D. Wis. 1998), 
aff'd
 ,171 F.3d 1110 (7th Cir. 1999), for the proposition that their section 1983 claim and state constitutional claim are not subject to any statute of limitations defense because the claims amount to a facial challenge to the ordinance on free speech grounds.

This issue initially requires a determination of whether counts II and III of the Clear Channel plaintiffs' complaint qualify as "facial" or "as-applied" challenges to the zoning ordinance.  An "as-applied" challenge represents a plaintiff's protest against how a statute was applied in the particular context in which the plaintiff acted or proposed to act, while a "facial" challenge represents a plaintiff's contention that a statute is incapable of constitutional application in any context.  
Frye
, 109 F. Supp. 2d at 439.  This distinction is important because facts surrounding the plaintiff's particular circumstances are relevant only in an as-applied challenge.  
Frye
, 109 F. Supp. 2d at 439.  Furthermore, if the plaintiff succeeds in an as-applied claim, he may enjoin the objectionable enforcement of the statute only against himself, while a successful facial attack voids the statute in its entirety and in all applications.  
Frye
, 109 F. Supp. 2d at 439.  Several courts have suggested or directly held that a facial challenge to a statute on first amendment grounds is not subject to a statute of limitations defense.  
Frye
, 109 F. Supp. 2d at 439, citing 
Lavey
, 994 F. Supp. at 1023.

Counts II and III of the Clear Channel 
plaintiff
s' complaint cite the first amendment to the United States Constitution and section 4 of article I of the Illinois Constitution, respectively.  The claims request the court to "[a]djudicate and declare that the portions of the City of West Chicago's Ordinance are void and unenforceable due to its violations of the United States Constitution *** [and] Illinois Constitution."  Construing the allegations in the light most favorable to the Clear Channel 
plaintiff
s, as we must at this stage, we conclude that counts II and III of their complaint articulate a facial challenge to the ordinance on free speech grounds pursuant to the United States and Illinois Constitutions.  Therefore, the free speech claims under these counts are not subject to a statute of limitations defense, and the trial court erroneously dismissed them as untimely.

In appeal No. 2--04--0575, the City fails to address the contents of counts II and III of the Clear Channel 
plaintiff
s' complaint.  Instead, the City argues for the first time that the counts fail to state a claim for relief on free speech grounds because they do not allege that the ordinance distinguishes commercial and noncommercial speech.  The City contends that counts II and III do not state facial free speech challenges because the Clear Channel 
plaintiff
s "have not alleged that the City interprets its ordinance as precluding noncommercial or any other kind of message."

However, in the trial court, the City moved to dismiss the complaint 
only
 on timeliness grounds under section 2--619(a)(5) of the Code, and the parties to appeal No. 2--04--0575 never addressed the sufficiency of the free speech claims in counts II and III.  The City fails to acknowledge on appeal that its motion to dismiss admitted the legal sufficiency of the complaint, including the free speech allegations.  See 
Rajcan
, 347 Ill. App. 3d at 407.

The question remains whether, on remand, the City may revive the section 2--615 argument it presented here for the first time.  In 
River Park, Inc. v. City of Highland Park
, 295 Ill. App. 3d 90 (1998), the plaintiffs successfully appealed a dismissal of their complaint under section 2--615; and upon remand of the plaintiffs' first appeal, the defendant succeeded on a new motion to dismiss under section 2--619.  
River Park
, 295 
Ill. App. 3d
 at 91-92.  In the second appeal, the plaintiffs argued that the defendant waived consideration of its section 2--619 motion to dismiss by failing to file it with the earlier section 2--615 motion.  We held as follows:

"While considerations of judicial and client economy might favor this argument, neither the Code nor case law requires a party to file all dispositive motions together.  Section 2--619.1 of the Code states '[m]otions with respect to pleadings under Section 2--615, motions for involuntary dismissal or other relief under Section 2--619, and motions for summary judgment under Section 2--1005 may be filed together as a single motion in any combination.'  735 ILCS 5/2--619.1 (West 1996).  Thus, section 2--619.1 of the Code permits, but does not require, a party to file all of its motions to dismiss at once."  
River Park
, 295 
Ill. App. 3d
 at 93.

In agreement with this rationale, we conclude that, upon remand, the City may file a new motion to dismiss the Clear Channel plaintiffs' free speech claims if it so chooses.  See 
River Park
, 295 Ill. App. 3d at 93.

Parenthetically, we note that the City challenged the sufficiency of the Whiteco plaintiffs' complaint under section 2--615 in the trial court, but it appears that the trial court did not rule on that
 
part of the motion to dismiss.  In appeal No. 2--03--1392, neither the Whiteco 
plaintiff
s nor the City addresses whether the Whiteco 
plaintiff
s' complaint states a claim for relief or whether any insufficiency of the allegations would provide an alternative reason for dismissing portions of the complaint.  We do not address the issue, because neither the trial court nor the parties to appeal No. 2--03--1392 addressed it.

2.  Eminent Domain Act

Plaintiffs' claims under section 7--101 of the Eminent Domain Act are best characterized as inverse condemnation claims.  As distinguished from eminent domain, "inverse condemnation" describes the manner in which a landowner recovers compensation for a taking of its property when condemnation proceedings have not been instituted.  
Byron Dragway, Inc. v. County of Ogle
, 326 Ill. App. 3d 70, 73 (2001).  A land use regulation does not result in a taking if it substantially advances a legitimate governmental interest and does not deny an owner an economically viable use of its land.  
Byron Dragway
, 326 
Ill. App. 3d
 at 73.

Section 7--101 of the Eminent Domaint Act provides, "[p]rivate property shall not be taken or damaged for public use without just compensation, and in all cases in which compensation is not made by *** [a] municipality in its respective corporate capacity, such compensation shall be ascertained by a jury."  735 ILCS 5/7--101 (West 2002).  Section 7--101 also states that "[t]he right to just compensation as provided in this Article applies to the owner or owners of any lawfully erected off-premises outdoor advertising sign that is compelled to be altered or removed under this Article or any other statute, or under any ordinance or regulation of any municipality or other unit of local government, and also applies to the owner or owners of the property on which that sign is erected."  735 ILCS 5/7--101 (West 2002).  The plain meaning of the language used by the legislature is the best indication of legislative intent.  
Weatherman v. Gary-Wheaton Bank of Fox Valley, N.A.
, 186 Ill. 2d 472, 486 (1999).  When the language is clear, the court should not look to extrinsic aids for construction.  
Bogseth v. Emanuel
, 166 Ill. 2d 507, 513 (1995).

At oral argument, plaintiffs relied upon 
Department of Transportation v. Drury Displays, Inc.
, 327 Ill. App. 3d 881 (2002), to support their contention that the issuance of the tickets under the ordinance effected a taking under the Eminent Domain Act.  In 
Drury Displays
, CSX Transportation, Inc. (CSX), a railroad and landowner, executed a quitclaim deed conveying property to the Department of Transportation (the Department).  
Drury Displays
, 327 Ill. App. 3d at 882.  On the property, Drury Displays had leased space for a single billboard and the National Advertising Company (National) had leased space for two billboards.  
Drury Displays
, 327 Ill. App. 3d at 882.  Rather than terminating the leases by 60 days' written notice as was its contractual right, the Department chose to file a complaint for the condemnation of Drury's and National's leasehold interests in the property.

The Appellate Court, Fifth District, held that billboard owners have a right to just compensation for any condemned sign.  
Drury Displays
, 327 Ill. App. 3d at 888.  Additionally, the court went on to explain that the 1993 amendment to section 7--101 of the Act (735 ILCS 5/7--101 (West Supp.1993)) indicates that owners of billboards that are condemned under the Eminent Domain Act, as well as billboard owners who are forced to remove their signs under any regulatory authority, are entitled to just compensation.  
Drury Displays
, 327 Ill. App. 3d at 888-89.  
Drury Displays
 is helpful in analyzing the situation presented here.  Although the City did not initiate condemnation proceedings against plaintiffs' interests, the City issued the tickets under the ordinance to force 
plaintiff
s to remove their billboards.  Therefore, plaintiffs are entitled to just compensation under the Eminent Domain Act if their claims were timely filed.

Plaintiffs cite 
Eckhoff v. Forest Preserve District of Cook County
, 377 Ill. 208 (1941), for the proposition that their inverse condemnation claims did not accrue until the City issued the tickets against them.  In 
Eckhoff
, the defendant adopted recommendations to create a forest preserve that would contain a portion of the plaintiffs' land.  The plaintiffs sued for alleged damages suffered by the defendant's 13-year delay in exercising its eminent domain power over the plaintiffs' land.  In denying damages, the supreme court explained that "[t]he fact that at some future time a municipal corporation, with power of eminent domain, may require the land of a private owner, is one of the conditions on which the owner holds land in this State.  Entering into negotiations for the purchase, and filing of a petition to condemn, vests no interest in land."  
Eckhoff
, 377 Ill. at 214.  The court further stated that the "taking or damaging of land by eminent domain is not accomplished by passing resolutions or ordinances, nor by negotiating with the owner for the purchase of it, or serving notices upon him that the land may be required for public purpose."  
Eckhoff
, 377 Ill. at 214.  Therefore, 
plaintiff
s contend, the mere passing of the amended ordinance did not result in a taking and the taking occurred only when the City issued the tickets more than seven years later.  We agree.

In 
Eckhoff
, the court concluded that the "passing of resolutions or ordinances" did not amount to a taking in that case because the landowners were not "restricted in the use or occupancy of their property" upon the enactment of the resolutions.  
Eckhoff
, 377 Ill. At 215.  Here, although the ordinance required either the successful application for a special use permit or the complete removal of the billboards, the ordinance afforded 
plaintiff
s seven years in which to do so.  In other words, the ordinance did not affect 
plaintiff
s' right to display the billboards in their original state during the entire amortization period.  This court has held that "[n]o 'taking' occurs until the condemnor has physically intruded upon the premises or has 
radically
 curtailed the owner's use of his property."  (Emphasis in original.)  
Towne v. Town of Libertyville
, 190 
Ill. App. 3d
 563, 568 (1989).  We conclude that the enactment of the future ban on 
plaintiff
s' billboards does not qualify as the type of radical curtailment described in 
Towne
, because 
plaintiff
s' right to display the billboards was not curtailed until the tickets were issued, upon the expiration of the amortization period.

We note that, in addition to adding the future ban subject to the amortization period, the amendment to the ordinance also required 
plaintiff
s to obtain a special use permit before expanding, altering, relocating, or reconstructing the existing nonconforming billboards.  Unlike the future ban on all billboards, the restriction on modifying existing billboards became effective on the date the ordinance was amended, and it controlled 
plaintiff
s' right to modify their properties 
during
 the amortization period.  Therefore, one might argue that a claim for inverse condemnation challenging the restriction on 
modifications
 during the amortization period actually accrued on the date the ordinance was amended.  However, 
plaintiff
s did not attempt to alter their billboards; and they neither allege that the nonmodification restriction was a regulatory taking nor seek damages for this alleged restriction.  Therefore, the effective date of the nonmodification restriction, 
i.e.
, the date of the amendment, does not qualify as the date on which 
plaintiff
s' inverse condemnation claims accrued here.

The parties agree that plaintiffs' inverse condemnation claims are ripe and dispute only the date on which they ripened.  After concluding that the claims did not accrue on the date the ordinance was amended, we decide that they accrued upon the issuance of the tickets in October 1999.  Therefore, we next dispose of the parties' arguments regarding which statute of limitations applies to the inverse condemnation claims and whether the claims were timely filed.  Plaintiffs contend that the 20-year limitations period of section 13--101, which generally applies to adverse possession claims, also applies to their inverse condemnation claims.  Section 13--101 provides in relevant part that "[n]o person shall commence an action for the 
recovery of lands
, nor make an entry thereon, unless within 20 years after the right to bring such action or make such entry first accrued, or within 20 years after he, she or those from, by, or under whom he or she claims, have acquired 
title
 or 
possession
 of the premises."  (Emphasis added.)  735 ILCS 5/13--101 (West 2002).

The City responds that, because the Eminent Domain Act does not prescribe a limitations period, the "catch-all" five-year limitations period of section 13--205 of the Code applies.  Section 13--205 provides in relevant part that "actions on unwritten contracts, expressed or implied, or on awards of arbitration, or to recover 
damages
 for an injury done to property, real or personal, or to recover the possession of personal property or damages for the detention or conversion thereof, and all civil actions not otherwise provided for, shall be commenced within 5 years next after the cause of action accrued."  (Emphasis added.)  735 ILCS 5/13--205 (West 2002).

We conclude that we need not resolve this issue, because plaintiffs filed their claims for inverse condemnation within a few months of the issuance of the tickets.  Plaintiffs' claims were timely filed regardless of whether the 5- or 20-year limitations period applies.

For the preceding reasons, the judgments in both appeal No. 2--03--1392 and appeal No. 2--04--0575 are reversed.

No. 2--03--1392, Reversed.

No. 2--04--0575, Reversed.

McLAREN and BOWMAN, JJ., concur.