No. 2--06--0390          Filed: 6-16-07

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| KATHERINE R. NAPLETON, as Trustee under the Katherine R. Napleton Revocable Self-Declaration of Trust Dated October 1, 1992, | ) ) ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff-Appellant, | ) ) | No. 05--CH--1058 |
| v. | ) ) | |
| THE VILLAGE OF HINSDALE, | ) ) | Honorable Kenneth L. Popejoy, |
| Defendant-Appellee. | ) | Judge, Presiding. |

JUSTICE O'MALLEY delivered the opinion of the court:

Plaintiff, Katherine R. Napleton, appeals the judgment of the circuit court of Du Page County, dismissing her first amended verified complaint (complaint) pursuant to section 2--615 of the Code of Civil Procedure (Code) (735 ILCS 5/2--615 (West 2004)). In her complaint, plaintiff sought to invalidate certain amendments to the zoning code of defendant, the Village of Hinsdale, which changed the permitted uses available to her property. The trial court dismissed plaintiff's complaint by applying a rational basis test to determine the validity of the amendments to defendant's zoning code. On appeal, plaintiff contends that the trial court erred because it did not consider the amendments to defendant's zoning code under a substantial relationship test. We affirm.

We summarize the pertinent allegations from plaintiff's complaint. Plaintiff owns a group of contiguous parcels on Ogden Avenue in the Village of Hinsdale (the subject property). The subject

property is improved with a structure that is currently leased to General Motors, which uses the subject property as a training facility. The subject property is zoned B-3 under defendant's zoning code.

Defendant's zoning code provides for three business zoning districts, B-1, B-2, and B-3. Section 5--101 of the Hinsdale zoning code provides that the "B-1 Community Business District" zoning classification "is intended to serve the every day shopping needs of Village residents as well as to provide opportunities for specialty shops attractive to [the] wider suburban residential community around the Village. It permits uses that are necessary to satisfy most basic, frequently occurring shopping needs." Hinsdale Zoning Code §5--101 (2007). The "B-2 Central Business District" zoning classification "is intended to serve the entire Hinsdale suburban community with a wide variety of retail and service uses. It is intended to serve as the primary shopping area of the Village." Hinsdale Zoning Code §5--101 (2007). The "B-3 General Business District" zoning classification "is intended to serve the Hinsdale suburban community with a full range of locally oriented business uses commonly located along established traffic routes." Hinsdale Zoning Code §5--101 (2007).

Before the passage of the amendments to the zoning code of which plaintiff complains, the zoning code allowed depository and nondepository credit institutions to be permitted uses in properties under the B-1 and B-3 zoning classifications. The zoning code, however, did not allow depository and nondepository credit institutions to be permitted uses on the ground floors of properties under the B-2 zoning classification.

The area in which the subject property is located (on Ogden Avenue between York and County Line Roads) is commonly known as the Ogden/York Corridor. Properties located in the

Ogden/York Corridor are mainly zoned B-3. By contrast, properties primarily zoned B-1 and B-2 are located in the "downtown commercial core" area of Hinsdale and not in the Ogden/York Corridor.

In March 2004, the Hinsdale Board of Trustees instituted a temporary moratorium related to beauty salons and financial institutions in the B-1 and the B-3 zoning districts, because the board was concerned with whether the businesses in the Village's business districts struck an appropriate balance between businesses that provide sales tax revenue and businesses that do not. The board of trustees instituted the moratorium even though the Hinsdale Plan Commission unanimously had voted against it. The effect of the temporary moratorium was to prevent beauty salons and financial institutions from being located on the ground floors of properties located in the B-1 and B-3 zoning districts.

While the temporary moratorium was in effect, defendant retained Gruen Gruen + Associates (GGA) to conduct a study including, among other things, the impact of beauty salons and financial institutions on taxable retail sales in the B-1 and B-3 zoning districts. GGA's study reported that beauty salons and barber shop businesses did not have a negative impact on the business districts within the Village. The GGA study also noted that additional credit institutions would likely impose an opportunity cost in the core part of downtown Hinsdale (which was zoned primarily B-1 and B-2). The study made no similar finding for the Ogden/York Corridor, where the subject property is located.

GGA recommended that the Village allow no additional credit institutions to be located on the ground floors of properties in the "B-2 Central Business District" zoning districts. GGA did not make that same recommendation for properties in the B-1 and B-3 zoning districts.

On January 18, 2005, defendant passed amendments to the Hinsdale Zoning Code that were designed to maintain an appropriate mix of sales-tax-revenue-generating and non-sales-tax-revenue-generating business uses in the Village and effectively made permanent the March 2004 temporary moratorium regarding depository and nondepository credit institutions. Specifically, defendant amended its zoning code to remove depository and nondepository credit institutions as permitted uses in the B-1 and B-3 zoning districts. Hinsdale Zoning Code §5--102D (amended January 18, 2005). Instead, depository and nondepository credit institutions were made special uses for the B-1 and B-3 zoning districts. Hinsdale Zoning Code §5--105B (amended January 18, 2005). Additionally, the zoning code was amended to prohibit any new depository or nondepository credit institution from being located on the first floor of any building in the B-1 or B-3 zoning district. Hinsdale Zoning Code §5--109G (amended January 18, 2005). Further, depository and nondepository credit institutions were limited to two drive-through lanes. Hinsdale Zoning Code §5--109H (amended January 18, 2005).

Plaintiff alleged that the result of the January 2005 amendments was to effectively prevent all properties located in the B-1 and B-3 zoning districts from having financial institutions located on the ground floors. Plaintiff alleged that this would prevent her from ever being able to sell or lease the subject property to a financial institution. Plaintiff further alleged that the amendments caused seven structures containing financial institutions in the B-1 and B-3 zoning districts to become nonconforming.

Following the amendment to defendant's zoning code, on July 28, 2005, plaintiff filed a complaint challenging the validity of the amendments as applied to the subject property. Pursuant to section 2--615 of the Code, defendant filed a motion to dismiss plaintiff's complaint. Plaintiff

withdrew her complaint and, subsequently, filed the first amended complaint, challenging the validity of the amendments on their face.

Defendant, pursuant to section 2--615 of the Code, moved to dismiss the first amended complaint. On February 15, 2006, the trial court granted the motion without prejudice. Plaintiff elected to stand on her pleading and, on March 13, 2006, obtained a final order of dismissal of her complaint. From this final order, plaintiff timely appeals.

On appeal, plaintiff contends that the trial court erred in dismissing her complaint pursuant to defendant's section 2--615 motion to dismiss. A section 2--615 motion to dismiss attacks the legal sufficiency of a complaint, asserting the presence of defects on the face of the complaint. Marshall v. Burger King Corp., 222 Ill. 2d 422, 429 (2006). When reviewing the dismissal of a complaint pursuant to section 2--615, we accept as true the well-pleaded facts of the complaint along with all reasonable inferences that may be drawn from those facts. Marshall, 222 Ill. 2d at 429. We also construe the allegations of the complaint in the light most favorable to the plaintiff. Marshall, 222 Ill. 2d at 429. The plaintiff is required to allege facts, and not simply conclusions, sufficient to bring its claim within a legally recognized cause of action. Marshall, 222 Ill. 2d at 429-30. In light of these principles, a cause of action should not be dismissed pursuant to a section 2--615 motion to dismiss unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to relief. Marshall, 222 Ill. 2d at 429. We review de novo the grant of a section 2--615 motion to dismiss. Marshall, 222 Ill. 2d at 429.

Plaintiff purports to state a facial challenge to the validity of the amendments, rather than a challenge to the validity of the amendments as applied to her property. An as-applied challenge represents a plaintiff's objection to how a particular ordinance was applied in the specific context in

which the plaintiff found himself, while a facial challenge represents the plaintiff's claim that a specific ordinance cannot be constitutionally applied in any context. Lamar Whiteco Outdoor Corp. v. City of West Chicago, 355 Ill. App. 3d 352, 365 (2005). The distinction is important because the plaintiff's specific context, or the facts specifically applicable to the plaintiff's property, are relevant only in an as-applied challenge. Lamar Whiteco, 355 Ill. App. 3d at 365. Thus, if the plaintiff prevails in an as-applied challenge, he may enjoin the enforcement, against him alone, of the objectionable ordinance. Lamar Whiteco, 355 Ill. App. 3d at 365. By contrast, in order to pursue a successful facial challenge, the plaintiff must establish that the ordinance is invalid under any set of facts. People v. Garvin, 219 Ill. 2d 104, 117 (2006). The fact that the ordinance might operate invalidly under some circumstances and validly under others is insufficient to establish facial invalidity. Hill v. Cowan, 202 Ill. 2d 151, 157 (2002). If the plaintiff succeeds in the facial challenge, then the ordinance will be invalidated in its entirety and in all applications. Lamar Whiteco, 355 Ill. App. 3d at 365.

The test of an ordinance's constitutionality depends upon the nature of the right that is alleged to be infringed. In re D.W., 214 Ill. 2d 289, 310 (2005). There are three tiers of constitutional scrutiny. If an ordinance burdens a fundamental right or involves a suspect classification, it will be subject to strict scrutiny. People v. Botruff, 212 Ill. 2d 166, 176 (2004). The fundamental rights recognized for purposes of substantive due process and equal protection concerns are limited to "those that lie at the heart of the relationship between the individual and a republican form of nationally integrated government." People ex rel. Tucker v. Kotsos, 68 Ill. 2d 88, 97 (1977). Fundamental rights include the expression of ideas (i.e., speech), participation in the political process, interstate travel, and intimate personal privacy interests. Kotsos, 68 Ill. 2d at 97. Under strict

scrutiny review, the challenged regulation must be narrowly tailored to serve a compelling governmental interest, otherwise it will be held invalid. Village of Lake Villa v. Stokovich, 211 Ill. 2d 106, 122 (2004). Intermediate scrutiny applies to an ordinance that is based on a gender or illegitimacy classification (In re Detention of Samuelson, 189 Ill. 2d 548, 561-62 (2000)) or that causes certain incidental burdens to speech (Desnick v. Department of Professional Regulation, 171 Ill. 2d 510, 521 (1996)). Under intermediate scrutiny review, the regulation must be substantially related to an important governmental interest. See Department of Public Aid ex rel. Cox v. Miller, 146 Ill. 2d 399, 408 (1992), quoting Pickett v. Brown, 462 U.S. 1, 8, 76 L. Ed. 2d 372, 379, 103 S. Ct. 2199, 2204 (1983) (classification based on illegitimacy is unconstitutional unless it bears a substantial relation to particular governmental interest). In all other instances, the court will review the ordinance under highly deferential rational basis scrutiny. Botruff, 212 Ill. 2d at 176-77. Under the rational basis test, the challenged regulation will be upheld if it bears a rational relationship to a legitimate governmental purpose and is not arbitrary or unreasonable. Stokovich, 211 Ill. 2d at 122. Our first task here, then, is to determine the nature of the right burdened by a municipality's zoning ordinance, in order to determine the level of constitutional scrutiny to apply in evaluating the constitutionality of the zoning amendments.

Plaintiff suggests that intermediate scrutiny is appropriate to review the challenged zoning amendments. Plaintiff argues that, because a zoning ordinance affects private property, which involves both liberty and property rights, it should be reviewed under a heightened level of scrutiny. Plaintiff relies on Hanna v. City of Chicago, 331 Ill. App. 3d 295 (2002), which conducted an analysis of a facial challenge to a zoning ordinance. In Hanna, the court used the "substantial relationship test" to determine whether the zoning regulation at issue there bore a substantial relationship to the

public health, safety, and welfare, or whether the ordinance was arbitrary, irrational, and capricious. Hanna, 331 Ill. App. 3d at 306. To support the application of intermediate scrutiny, plaintiff also cites Stokovich, 211 Ill. 2d at 123-24, which stated that Hanna held that the "more stringent 'substantial relationship' test" applied to a facial challenge to an ordinance, instead of the rational basis test. From this statement, plaintiff concludes that the supreme court accepted both that the substantial relationship test applies to a facial challenge to a zoning regulation and that it provides, in fact, intermediate-level scrutiny for important, but not fundamental, rights. Defendant, by contrast, contends that the trial court properly employed the rational basis test in resolving plaintiff's facial challenge to the zoning amendments and points to Thornber v. Village of North Barrington, 321 Ill. App. 3d 318, 325 (2001).

Our review of the parties' claims is hampered by their failure to consider the nature of the right at issue, and thus, to determine the level of scrutiny required to review the amendments to the zoning ordinance at issue. Instead, the parties appear to argue that the level of scrutiny is dependent upon the nature of the challenge: as-applied or facial. We disagree. The nature of the challenge determines the evidence needed to sustain the claim. A facial challenge requires a plaintiff to prove the invalidity of the challenged ordinance under all circumstances; an as-applied challenge requires the plaintiff to prove the invalidity of the challenged ordinance as it relates to the plaintiff's particular circumstances. Lamar Whiteco, 355 Ill. App. 3d at 365. The nature of the challenge does not--indeed, it cannot-- affect the right at issue. See People ex rel. Foreman v. Soujourners Motorcycle Club, Ltd., 134 Ill. App. 3d 448, 453-54 (1985) (zoning ordinance alleged to infringe on first amendment right of peaceable assembly considered under strict scrutiny standard of whether challenged ordinance is

narrowly drawn and advances a substantial governmental interest). As noted above, our analysis must begin, therefore, with a determination of the nature of the right at issue here.

We begin by noting that a municipality may utilize its police power to promote and regulate the public welfare. Village of Glenview v. Ramaker, 282 Ill. App. 3d 368, 371 (1996). Zoning is such an exercise of a municipality's police power and is targeted at the public welfare. City of Galena v. Dunn, 222 Ill. App. 3d 112, 120 (1991), quoting S. Connor, Zoning, in Illinois Municipal Law, §10.2 (Ill. Inst. for Cont. Legal Educ. 1987) ("[z]oning has been defined as 'an exercise of the police power that governs where and how land may be used and developed' "). Further, zoning has been immemorially held to be a legislative function exercised by a municipality. Village of Euclid v. Amber Realty Co., 272 U.S. 365, 388, 71 L. Ed. 303, 311, 47 S. Ct. 114, 118 (1926); La Salle National Bank v. City of Evanston, 57 Ill. 2d 415, 428 (1974); Lapp v. Village of Winnetka, 359 Ill. App. 3d 152, 170 (2005). Additionally, it is similarly well established that, where there is room for a difference of opinion concerning the reasonableness of a zoning ordinance, the determination of the legislative body of the municipality is conclusive. La Salle National Bank, 57 Ill. 2d at 428; Lapp, 359 Ill. App. 3d at 170. In other words, rational basis scrutiny will be applied to challenges to legislative enactments to which extreme deference is owed. People ex rel. Skinner v. Hellmuth, Obata & Kassabaum, Inc., 135 Ill. App. 3d 765, 769 (1985), rev'd on other grounds, 114 Ill. 2d 252 (1986). Zoning enactments (at least those that do not infringe fundamental rights or engage in discrimination based on race or national origin) are precisely the type of legislative enactments to which this level of deference is owed; therefore, when a zoning ordinance (not affecting a fundamental right) is subjected to a facial challenge to its validity, it should be scrutinized under the rational basis level of scrutiny.

Plaintiff maintains that a facial challenge to a zoning ordinance is subjected to a higher level of scrutiny, namely, intermediate scrutiny, and that this is embodied in the holding in Hanna. In Hanna, the plaintiff owned a 5-story, 26-unit brick building in Chicago. Hanna, 331 Ill. App. 3d at 299. The city enacted an ordinance that imposed height restrictions, increased square footage requirements, and lowered the density for new construction in the area in which the plaintiff's property was located. Hanna, 331 Ill. App. 3d at 299. The plaintiff complained that, as a result of the ordinance, if his building were to be destroyed, upon replacement it could not be used as a multifamily dwelling and that, as it currently stood, his property had been rendered a nonconforming use. Hanna, 331 Ill. App. 3d at 299. The plaintiff further contended that the ordinance deprived him of the highest and best use of his property and diminished the value of his property. Hanna, 331 Ill. App. 3d at 299-300.

The plaintiff filed a complaint, making a facial challenge to the validity of the ordinance. Hanna, 331 Ill. App. 3d at 301. In resolving the city's motion to dismiss, the trial court held, among other things, that a reasonable relationship existed between the ordinance and a legitimate governmental interest. Hanna, 331 Ill. App. 3d at 302. The appellate court reversed. It held that, because of the importance of the rights of property ownership, evidenced in cases like Northern Trust Co. v. City of Chicago, 4 Ill. 2d 432, 437 (1954) (a property owner has the right to use his property as he sees fit subject only to such regulation as is necessary to secure the common welfare; this constitutes "both a liberty and a property right"), and Cosmopolitan National Bank of Chicago v. City of Chicago, 27 Ill. 2d 578, 584 (1963) (it is a "well-established principle" that a real property purchaser has a right to rely upon the zoning classification of the property that existed at the time of purchase; zoning will not be changed unless "the change is required for the public good"), the proper

measure of the validity of a zoning ordinance was "whether the legislation bears a substantial relationship to the public health, safety and welfare or whether it is arbitrary, irrational and capricious." Hanna, 331 Ill. App. 3d at 305-06. In order to effect the substantial relationship standard of scrutiny applicable to a facial challenge, the appellate court held that the court passing upon the validity of the ordinance must consider the factors first articulated in La Salle National Bank of Chicago v. County of Cook, 12 Ill. 2d 40, 46-47 (1957), including:

"(1) the existing uses and zoning of nearby property; (2) the extent to which property values are diminished by the particular zoning restrictions; (3) the extent to which the destruction of property values of the plaintiff promotes the health, safety, morals or general welfare of the public; (4) the relative gain to the public as compared to the hardship imposed upon the individual property owner; (5) the suitability of the subject property for the zoned purposes; and (6) the length of time the property has been vacant as zoned considered in the context of land development in the area in the vicinity of the subject property." Hanna, 331 Ill. App. 3d at 306.

(We note that in Sinclair Pipe Line Co. v. Village of Richton Park, 19 Ill. 2d 370, 378 (1960), the court identified additional factors to consider along with the LaSalle factors, including (7) whether there exists a comprehensive zoning plan; (8) whether the challenged ordinance is in harmony with the comprehensive zoning plan (if it exists); and (9) whether the community needs the use. We will refer to all of these factors as LaSalle factors, notwithstanding the supplementation provided by Sinclair.) Plaintiff thus urges that this court explicitly adopt the substantial relationship level of scrutiny along with the use of the La Salle factors as embodied in the holding in Hanna in resolving

her facial challenge to the validity of the amendments to defendant's zoning code. We decline to do so.

We note, initially, that plaintiff is correct in observing that Hanna employed the La Salle factors in resolving a facial challenge to the validity of a zoning ordinance. We also note that Hanna is not readily factually distinguishable from this case. Nevertheless, we adhere to the rational basis review described above, for the following reasons.

In the first place, the development of the La Salle factors and the substantial relationship test arose in the context of as-applied challenges to the validity of zoning ordinances, and not facial challenges. The distinction between a facial challenge and an as-applied challenge is important in the zoning context, as a zoning ordinance may be valid in its general aspects but may be invalid as to a particular piece of property because the balance of hardships (the gain to the public in general versus the detriment to the individual owner) overwhelmingly burdens the individual owner. Northern Trust Co., 4 Ill. 2d at 438. To account for this possibility, the La Salle factors were developed as a way to explicitly balance the gain to the public against the burden on the individual property owner. See La Salle, 12 Ill. 2d at 46-47. The difference between a facial challenge and an as-applied challenge to a zoning ordinance also implies that different evidentiary standards will govern the review. This, then, accounts for the differing focuses of facial (a universal validity or invalidity) and as-applied (the balance between public good and individual detriment) challenges. In other words, if the same evidentiary standard were used in each type of challenge, then there would be no difference between a facial challenge and an as-applied challenge. In turn, this would mean that a zoning ordinance could never be generally valid but invalid as to a particular piece of property; instead it would be either valid as to all or invalid as to all. In order to preserve the possibility that a zoning ordinance may be

generally valid even as it is arbitrary and irrational in its application to a particular piece of property, there must be differing requirements of proof for a facial challenge and an as-applied challenge. Thus, the La Salle factors, contrary to plaintiff's argument, do not implicate the level of scrutiny but, rather, the evidence needed to sustain the claim of invalidity. See Lamar Whiteco, 355 Ill. App. 3d at 365 (explaining the differing evidentiary burdens applicable to facial and as-applied challenges).

Additionally, the substantial relationship test appears to be an historical formulation that has been consistently retained even though, at the time it was originally enunciated, the concept of intermediate scrutiny had not yet arisen. Plaintiff notes that the substantial relationship formulation used in zoning cases can be traced back at least to Euclid, 272 U.S. at 395, 71 L. Ed. at 314, 47 S. Ct. at 121. In Euclid, the Supreme Court was confronted with an as-applied challenge to a village's zoning scheme. Euclid, 272 U.S. at 384, 71 L. Ed. at 309, 47 S. Ct. at 117. In holding that the village's zoning ordinance was valid, the Court held that, in order to establish unconstitutionality, the challenger would have to show that the ordinance was "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." Euclid, 272 U.S. at 395, 71 L. Ed. at 314, 47 S. Ct. at 121.

Euclid and its "substantial relation" formulation quickly was adopted into the Illinois legal lexicon.[1] In Minkus v. Pond, 326 Ill. 467, 480 (1927), the court upheld a zoning ordinance (as applied) under Euclid's substantial relationship test. Shortly before Minkus, the supreme court, while

---

[1]We note that Euclid as well as the Illinois cases referencing it may not be the earliest cases to announce the "substantial relation" requirement. See, e.g., East Side Levee & Sanitary District v. East St. Louis & Carondelet Ry., 279 Ill. 123, 130 (1917), citing Minnesota v. Barber, 136 U.S. 313, 34 L. Ed. 455, 10 S. Ct. 862 (1890).

citing Euclid, nevertheless considered the validity of a zoning ordinance under a rational basis test. Village of Western Springs v. Bernhagen, 326 Ill. 100, 103 (1927) ("When the reasonableness of the [zoning] ordinance is challenged the question for the court is not whether it thinks the ordinance wise, but whether the ordinance has a rational relation to the public health, morals, safety or general welfare"). The "substantial relation" formulation has persisted in Illinois law. See, e.g., La Salle, 12 Ill. 2d at 46 ("if the restrictions [of the zoning ordinance] imposed bear no real and substantial relation to the public health, safety, morals, comfort and general welfare, the ordinance is void"); Hanna, 331 Ill. App. 3d at 306 ("the applicable level of scrutiny [for a challenge to the constitutionality of a zoning ordinance] is whether the legislation bears a substantial relationship to the public health, safety and welfare or whether it is arbitrary, irrational and capricious").

Over time, "substantial relation" has evolved into a term of art signifying intermediate scrutiny. Nevertheless, "substantial relation" has unreflectingly persisted in Illinois law, in spite of its evolution into a term of art that should have prompted a reevaluation of the meaning of the phrase in relation to the level of scrutiny to employ in determining the constitutional validity of a challenged zoning ordinance.

In 1976, in Craig v. Boren, 429 U.S. 190, 50 L. Ed. 2d 397, 97 S. Ct. 451 (1976), the Supreme Court explicitly adopted an intermediate level of scrutiny for gender classifications. In Craig, the Supreme Court held that, under intermediate scrutiny, a gender classification will withstand a constitutional challenge if it serves an important governmental objective and is substantially related to the achievement of that purpose. Craig, 429 U.S. at 197, 50 L. Ed. 2d at 407, 97 S. Ct. at 457. Likewise, in 1988, the Supreme Court explicitly extended the coverage of intermediate scrutiny to classifications based on illegitimacy. See Clark v. Jeter, 486 U.S. 456, 461, 100 L. Ed. 2d 465, 472,

108 S. Ct. 1910, 1914 (1988) ("[t]o withstand intermediate scrutiny, a statutory classification must be substantially related to an important governmental objective"). Intermediate scrutiny has also been applied where governmental actions burden a party's first amendment rights. See City of Los Angeles v. Alameda Books, Inc., 535 U.S. 425, 152 L. Ed. 2d 670, 122 S. Ct. 1728 (2002) (validity of zoning provision directed at reducing crime accruing to adult entertainment establishments and incidentally limiting dissemination of adult expression considered under intermediate scrutiny). The rise of intermediate scrutiny imparted a different meaning to "substantially related" and turned the phrase into a term of art. Because Euclid and the Illinois cases adopting the Euclid formulation of "substantial relation" predated the inception of the term of art signifying intermediate scrutiny, it would be erroneous to consider those cases to advocate intermediate scrutiny for zoning ordinances as that concept has since developed.

This is seen, too, by examining the underpinnings of Euclid and the various Illinois cases adopting it. Euclid relied extensively upon City of Aurora v. Burns, 319 Ill. 84 (1925), in reaching its substantial relation holding. See Euclid, 272 U.S. at 390-93, 71 L. Ed. at 311-13, 47 S. Ct. at 119-20. Burns, however, held that the zoning ordinance at issue there was subject to rational basis scrutiny, requiring the ordinance to bear a reasonable relationship to the purposes for which the ordinance was enacted. Burns, 319 Ill. at 93. Bernhagen, which adopted Euclid, nevertheless held that the zoning ordinance (as applied to the property at issue) was subject to rational basis review, stating that the test was "whether the [zoning] ordinance has a rational relation to the public health, morals, safety or general welfare." Bernhagen, 326 Ill. at 103. Two months later, in Minkus, the court cited both Burns and Euclid and held: "We are unable to say that the ordinance as it affects the property involved herein discloses an unreasonable or arbitrary conclusion and exercise of power on

the part of the zoning authorities and that it has no substantial relation to the public health, safety, morals or general welfare." Minkus, 326 Ill. at 480. This examination of the underpinnings and initial development of the "substantial relation" language suggests that, at first, it was no more than an alternate statement of the rational basis test, explicitly tailored to cover the interests advanced by a zoning ordinance, namely, the promotion of the public health, morals, or safety or general welfare. As we have noted, these preliminary cases involved as-applied challenges to zoning ordinances. Over time, the analysis of an as-applied challenge to a zoning ordinance developed into the La Salle factors to allow a more explicit and painstaking balancing of the public good versus the individual harm. We therefore conclude that, despite the retention of the longstanding "substantial relation" formulation in the context of constitutional challenges to zoning ordinances, it does not signify a deliberately heightened scrutiny apart from the application of the La Salle factors in an as-applied challenge. Indeed, the utilization of the La Salle factors in an as-applied challenge prevents the irrational, unreasonable, and arbitrary application of a zoning ordinance to a particular property--the flip side of the rational basis test. See Village of Chatham v. County of Sangamon, 351 Ill. App. 3d 889, 899 (2004), aff'd, 216 Ill. 2d 402 (2005) (where provision is subject to rational basis scrutiny, the party challenging the provision must demonstrate that it is arbitrary and unreasonable in order to prevail). We note that Hanna, 331 Ill. App. 3d at 306 ("[T]he applicable level of scrutiny [for a challenge to the constitutionality of a zoning ordinance] is whether the legislation bears a substantial relationship to the public health, safety and welfare or whether it is arbitrary, irrational and capricious"), actually refers to both the substantial relation test and rational basis scrutiny, because the point of the latter part of the quoted passage is to make sure that the zoning ordinance is rational. Thus, the "substantial relation" discussed in zoning challenges is compatible with the traditional rational basis

scrutiny to which the local exercise of police power has generally been subjected. We discern neither a need nor a reason to disturb this deferential level of scrutiny in a facial challenge to the municipality's exercise of its police power.

In a last attempt to achieve heightened scrutiny, plaintiff alleges that the amendments to the zoning ordinance infringe on her property rights to use her property in any manner she sees fit. She is right, of course, but the rights infringed do not belong to the category of fundamental rights, which we identified above and which include speech, participation in the political process, interstate travel, and intimate personal privacy interests. Likewise, the rights alleged to be infringed do not involve a suspect classification or implicate plaintiff's first amendment rights. We also note that plaintiff does not claim that her fundamental rights have been infringed.[2] Accordingly, plaintiff's challenge to the constitutionality of the amendments to defendant's zoning code will be considered under the rational basis level of scrutiny. See Ramaker, 282 Ill. App. 3d at 371-72 (ordinance prohibiting swine in village limits upheld under rational basis scrutiny); People v. Avery, 277 Ill. App. 3d 824, 831 (1995) (statute prohibiting driving under the influence of alcohol held to be a proper exercise of police power under rational basis scrutiny). To determine whether defendant's amendments to its zoning code pass constitutional muster on their face, then, requires them to be subjected to rational basis scrutiny. In turn, this inquiry proceeds in the following stepwise fashion: we (1) identify the public interest the amendments are concerned with; (2) examine whether they bear a reasonable relationship to the

---

[2]As noted above, plaintiff contends that zoning provisions should be subject to intermediate scrutiny because a zoning provision implicates both liberty and property rights. See Northern Trust Co., 4 Ill. 2d at 437.

interest; and (3) determine whether the method employed in the amendments to further or to protect the interest is reasonable. Alamo Rent A Car, Inc. v. Ryan, 268 Ill. App. 3d 268, 272 (1994).

Defendant contends, and the record supports, that the public interest served by the zoning amendments was the protection of the public fisc through maintaining a balance in the business districts between businesses that generate sales tax revenue and businesses that do not. In undertaking this purpose, defendant conducted public meetings and hearings and procured expert studies of the issue.[3] Based on all of its inquiries, defendant concluded that allowing banks and other non-tax-revenue-generating businesses to move into the business districts eroded the Village's tax base and imposed an opportunity cost upon the Village. Based on our review of the record, we cannot say that defendant's conclusion on this point was arbitrary, irrational, capricious, or unsupported by the evidence it had developed. Defendant's interest in protecting its tax and financial bases is reasonably related to the final form of the amendments to the zoning ordinance. Moreover, the method chosen, precluding banks and other financial institutions from operating in the ground floors of the various buildings, and limiting the size of drive-through operations, is a reasonable method to achieve defendant's goal. We note that defendant did not preclude banks and financial institutions altogether, but only from the first floors of structures in the affected zoning districts. Plaintiff does not indicate that it is wholly unfeasible to locate a bank or financial institution on the second or higher floors of the buildings in the affected zoning districts. Accordingly, we hold that defendant's zoning amendments at issue here satisfy the rational basis scrutiny of their constitutionality--the zoning amendments are reasonably related to a legitimate governmental interest

---

[3]We acknowledge that defendant's expert, GGA, commented only on the effect of banks and other financial institutions in the downtown areas.

and their implementation is a reasonable method to achieve their purpose. Further, for the reasons stated above, we hold that the trial court appropriately reviewed the zoning amendments at issue here for a rational relationship to a legitimate governmental purpose. Also, in spite of the factual similarity, we decline to follow Hanna, because it is unnecessary and unwarranted to apply a property-specific (and possibly heightened constitutional scrutiny) balancing test to plaintiff's facial challenge to the validity of a zoning provision.

We now address in turn plaintiff's specific contentions on appeal. Initially, plaintiff's arguments are directed at determining the proper level of scrutiny to apply to a facial challenge to the constitutionality of a zoning provision. As we have noted, this misstates the issue and the manner in which the issue should be resolved. The issue is not what scrutiny is universally applicable to a facial challenge but, rather, what right is violated and what level of scrutiny pertains to the right that is violated. As we have already explained our thinking in regard to this issue, we will not further address plaintiff's arguments that seek to establish that the nature of the challenge dictates the level of scrutiny.

Next, plaintiff notes that, generally, most plaintiffs who challenge zoning ordinances do so by first attempting to secure a zoning change, being rejected by the local zoning authority, and then attempting to have the ordinance declared unconstitutional as applied to them. Plaintiff notes that she did not follow this general course, but that defendant amended its zoning ordinance and "foisted" it upon her "without valid justification." Plaintiff contends that, because of this, she deserves to have her challenge reviewed under the purported greater protection of the heightened scrutiny of the substantial relationship test. Plaintiff fails to cite any authority in support of her argument. Accordingly, we deem it forfeited. 210 Ill. 2d R. 341(h)(7).

Next, plaintiff raises a number of arguments challenging the analysis in <u>Thornber</u> and the trial court's reliance on that case resulting in its application of rational basis scrutiny to the challenged zoning amendments. Our analysis above demonstrates that rational basis scrutiny is appropriate for plaintiff's claims in this case. If the trial court erroneously reasoned that result from <u>Thornber</u>, then any error in its reasoning is of no moment; it is the trial court's judgment, and not its reasoning, that is being appealed. <u>Medical Alliances, LLC v. Health Care Service Corp.</u>, 371 Ill. App. 3d 755, 759 (2007). Additionally, imperfections in the reasoning in <u>Thornber</u> and its applicability to the case at bar are likewise irrelevant in light of our analysis above. We need not address plaintiff's <u>Thornber</u>-based arguments further. Relatedly, plaintiff urges that the trial court should have followed <u>Hanna</u>. As revealed above, we have found <u>Hanna</u> to be unpersuasive and have declined to follow it. We need not further address plaintiff's arguments relating to <u>Hanna</u>.

Before addressing plaintiff's final argument, we note that defendant argues that there is a "critical distinction between as-applied and facial constitutional challenges." Defendant is caught up in the erroneous conception that the nature of the challenge, and not the nature of the right infringed, determines the level of scrutiny to apply. Nevertheless, defendant rightly notes that an as-applied challenge is specific to the circumstances of the subject property, while the facial challenge attempts to demonstrate the invalidity of the ordinance under any set of circumstances. <u>Lamar Whiteco</u>, 355 Ill. App. 3d at 365.

Plaintiff essentially concedes the truth of the distinction in terms very like those employed by defendant. Plaintiff then, erroneously, argues that <u>Cosmopolitan</u> and <u>Harris Trust & Savings Bank v. Duggan</u>, 105 Ill. App. 3d 839 (1982), <u>aff'd</u>, 95 Ill. 2d 516 (1983), involved facial challenges to the validity of zoning ordinances. Both cases analyzed zoning issues only as they applied to the subject

properties therein. Duggan, 95 Ill. 2d at 531-32; Cosmopolitan, 27 Ill. 2d at 584-85; Duggan, 105 Ill. App. 3d at 850. This fact undercuts plaintiff's next contention, that the fact that they involved single parcels could not transmute the challenges from facial to as-applied. Simply put, the zoning challenges in those cases were as applied to the subject properties. Duggan, 95 Ill. 2d at 527 ("we therefore address the issue of whether the down-zoning from R-8 to R-5 was unconstitutional and void as applied to the property"); Cosmopolitan, 27 Ill. 2d at 579 (the defendant appealed from the order of the trial court finding that "the zoning classification sought to be imposed by the amendatory ordinance was unconstitutional as applied to [the] plaintiffs' property"). Plaintiff, therefore, misconstrues Duggan and Cosmopolitan.

Further, the fact that both cases found that the exhaustion of administrative remedies did not apply does not render them facial challenges. Rather, the exhaustion-of-administrative-remedies exception applies where the party challenging an ordinance seeks to invalidate it in its entirety. See Duggan, 105 Ill. App. 3d at 846 ("Although courts have generally required strict compliance with the exhaustion rule, an exception has been recognized where, as in the present case, an ordinance is attacked as unconstitutional in its entirety"). In Cosmopolitan, there was no need to exhaust the administrative remedies, because the invalidity of the ordinance arose as a result of improper procedures used in enacting it. Cosmopolitan, 27 Ill. 2d at 583. In Duggan, the issue of exhaustion of remedies was not raised before the supreme court (Duggan, 95 Ill. 2d at 527-33), and the appellate court did not explain the issue or how it arose (Duggan, 105 Ill. App. 3d at 846). Further, as Cosmopolitan explicitly demonstrates, the fact that a plaintiff seeks to invalidate an ordinance in its entirety (which triggers the exception to the exhaustion of remedies) does not make it a facial challenge to the validity of the ordinance--there are other reasons to invalidate an ordinance that have

nothing to do with the facial validity of the ordinance. <u>Cosmopolitan</u>, 27 Ill. 2d at 583 (ordinance subjected to an as-applied challenge, but also invalidated in its entirety due to procedural irregularities). Plaintiff's argument is unavailing.

We also note that defendant argues that the substantial relationship test proposed by plaintiff would be virtually unworkable in the present context of reviewing the grant of a section 2--615 motion to dismiss. We agree that the <u>La Salle</u> factors would not easily lend themselves to consideration in a facial challenge to the validity of an ordinance, because they balance the action of a generally valid ordinance with its specific effect on a particular property. (Of course, a plaintiff in a facial challenge conceivably could include allegations encompassing each of the properties affected by the challenged ordinance. Plaintiff here, however, did not attempt to do this, but made allegations regarding how the challenged zoning amendments affected only her property.) We need not consider the matter further, however, because we have determined that the appropriate level of scrutiny here is rational basis.

Turning to plaintiff's final issue, she contends that the trial court erred in dismissing her complaint for failure to state a claim on which relief could be granted. We disagree. We initially note that plaintiff's complaint contains conclusory allegations regarding: that the amendments were passed to satisfy the individual desires of a few people; that they bestow no benefit upon and are not substantially related to the public welfare; that there was no community need for the amendments; and that defendant took no or insufficient care in planning the amendments. We will not consider the conclusory allegations of plaintiff's complaint.[4] Having reviewed the well-pleaded allegations and the

_____

[4]We note that, given the conclusory nature of many of the allegations that plaintiff contends satisfy the application of the <u>La Salle</u> factors, we would still find plaintiff's complaint to be insufficient

exhibits attached to the complaint, we find that they reveal that defendant exercised its legislative judgment only after months of gathering and developing information, holding meetings and public hearings, and receiving input from its Plan Commission.[5] Based on this background, defendant reasonably concluded that the continuing vitality of its business districts required a balance between businesses that do and that do not generate sales taxes. Defendant concluded that this meant precluding new banks and financial institutions from locating in the ground floors of properties in its business districts, because they impose an opportunity cost upon its financial and tax bases. We hold that this conclusion is rationally related to the legitimate purpose of protecting defendant's financial and tax bases. The amendments to the zoning code, therefore, are not invalid. Accordingly, we hold that plaintiff has failed to state a claim on which relief can be granted and that the trial court properly dismissed her first amended verified complaint.

For the foregoing reasons, we affirm the judgment of the circuit court of Du Page County.

Affirmed.

BYRNE and CALLUM, JJ., concur.

---

even if we were to review it under the heightened scrutiny she proposes.

[5]The Plan Commission initially recommended against imposing the temporary moratorium. Later, after full review, the Plan Commission recommended that the amendments to the zoning ordinance be adopted.